Thank you. This case presents the question of whether to apply new Section 71 of the tax code, which includes the changes made to that code by the 1984 Deficit Reduction Act, or old Section 71, to determine whether and to what extent Appellant Stanley Johnson can deduct the $400,000 alimony payment he made to his ex-wife in 1997. The outcome of the proper interpretation and application of the effective date provision of the Deficit Reduction Act, which is Section 422 of that Act. Section 422E1 contains a general rule, which applies New 71 to divorce or separation instruments executed after 1984. Subsection E2 expands that general rule. It allows application of New 71 to modifications of divorce instruments executed after 1985, or I'm sorry, before 1985. Our contentions on appeal are as follows. First, the party's 1997 settlement agreement, which provided for the alimony payment in question, is a written instrument incident to divorce executed after 1984, such that pursuant to 422E1, New 71 applies to this case and permits Mr. Johnson full deductibility of that $400,000 payment. We believe that the Court need look no further than this subsection in order to reach a decision in this case. Now, second, even if the government's contention is correct that 422E2 limits rather than expands application of the general rule in this case, neither the settlement agreement nor the family court's dismissal order is a modification under that subsection. 422E2 simply does not apply to this case. Thus, even under the government's interpretation of the effective date provisions, we would argue that New 71 applies. And finally, in the alternative if the Court nevertheless determines that Old 71 applies to this case, Mr. Johnson is still entitled to a partial deduction of his $400,000 payment. So as to our first argument, we believe that a plain language reading of 422E1 requires application of New 71. 422E1 states specifically that New 71 shall apply to divorce or separation instruments executed after December 31, 1984. The term divorce or separation instruments is specifically defined in Tax Code 71B2. And when we look at the definition contained therein, it states that such an instrument includes a written instrument incident to a decree of divorce. The fact that the 1997 agreement was a written instrument appears to be undisputed in this case. In determining whether that instrument was incident to divorce, we can look for guidance to some pre-1984 cases which we've cited in our brief. A general rule, for example, is contained in the Second Circuit's decision in Newton, where a legal obligation to support survives the dissolution of a marriage. A subsequent adjustment of this obligation is incident to the divorce within the purview of the statute. And I'd like to point out that Hollander, which is a case from this Court, also reached that same conclusion. There doesn't seem to be any real debate that the 1997 agreement between the parties here was a written instrument incident to divorce. And we would argue that the plain language of the statute does not require this Court to go beyond that analysis. If the instrument in question is a written instrument incident to divorce executed after 1984, New 71 applies to this case. Now, even assuming that one must look at the language of 422e2, which provides for the new law to then apply to modifications of a previous divorce decree, we argue that New 71 still applies. The government argues that 422e2 limits the applicability of the general rule, including the use in cases where the instrument in question qualifies as a modification of a divorce instrument executed prior to 1985. Because in this case, there is a divorce instrument executed before 1985, the government argues that this becomes the relevant question. In order to resolve that question, I think it's important to look closely at what a modification is and what it is not, and to compare these findings to the agreement we have in this case. If we look at the cases that the government has cited, both in its brief and below, we can see that a modification in those types of cases bears little resemblance to the 1997 agreement between the parties here. First of all, I'd like to point out that the three cases the government has cited, Martins, Lidman and Stroud, do not directly address the issue we have here. So none of them provide any sort of direct guidance to this court. None of them examine the relationship between the two parts of section 422. Of the cases cited by the government, two of those cases, both Martin and Lidman, dealt with later court decrees or orders. They did not deal with independent agreements entered into by the parties. So arguably, there wasn't even an issue there of a written instrument incident to divorce, because arguably a court order would not meet that criteria at all. Now, Stroud did deal with a later agreement. However, in Stroud, that agreement only addressed payments of arrearages, which under my understanding would be deductible under both the new and the old tax code. So the application of old 71 in that case apparently would not have changed the result at all. Now, the important thing about these three cases is that each of them dealt with only slight changes to a previous alimony order. And in Stroud, it dealt only with, like I said, the payment of arrearages, which had already been agreed to in a prior agreement. Here is what I'm trying to figure out. You have the divorce decree. If you didn't have the settlement agreement, the divorce decree would be in effect, correct? I believe that's correct, yes. Let me just say one thing. Pending any modifications of that decree by the court itself, yes. So the divorce decree they made, what does the settlement agreement do? Doesn't it, in effect, wipe out the decree with respect to this issue? Now, let's look at the settlement agreement. It's at the excerpts of record 28 and 29, because I would like to point you to some language there. I think the answer to your question. First answer the legal effect of it, and then we can look at the language. Okay. I think that an agreement between the parties could have various legal effects. In this case, the answer to your question would be yes, it completely replaces the divorce decree. Now, that, I don't think that needs to be the case every single time. I think an agreement could just modify, it could, parties could agree, for example, to pay more or less alimony based on what their prior obligation was. But why, if it, in effect, wipes out the obligation under the existing decree, why isn't that a modification, albeit a wholesale modification of the decree as to the alimony element? I think the reason it's not is because of the precise meaning of the term modification. I, I don't think that a modification means a wholesale change or replacement of a decree. And that's borne out in the case law, but it's also But the decree still stands. In other words, in the end, the judge gives you a decree of dissolution, so they are divorced, so obviously their agreement doesn't change that. In this case, the parties actually specifically stated in the agreement that the court would no longer have jurisdiction over any issue, not just alimony, but any issue related to the marriage between the parties. But, of course, parties can't, if they were children or there were other issues, parties can't stipulate jurisdiction away from a court, can they? That's true if they were, I'm not sure if that relates to this case, though. If, if the parties were children or something like that, they might not be able to over, you know, replace, I guess, the decree in that way. However, in this case, I think the parties did have that ability. If the agreement weren't complied with, what would be the mechanism for enforcing it? I, it would not go back down to family court. It would have to go to a court of general jurisdiction where it would be enforced as a contract. That's according to the, the language that the parties agreed to within the agreement. And I wanted to point out that the understanding of what a modification is as, as in the case law, is also in accord with the common sense understanding of what a modification is, as defined in Black's Law Dictionary, for example. Modify is defined as, quote, to change in incidental or subordinate features. And Black's gives a specific example of a modification as to increase or decrease. I think that, that that shows that if you have a decree or court order or agreement where the parties agree to pay more or less alimony, and that agreement looks back as in Stroud, that agreement looks back to the prior court decree, that would be a modification. In this case, however, the settlement and a release agreement between the parties divest the, excuse me, divest the family court of jurisdiction over the case over any issues related to scores. There wasn't a modification here changing from periodic payments to one lump sum. I, I don't believe so. First, I would. Isn't that what happened? It, it did do that, but it did more than that. It, it put in a lump sum payment, which ended periodic payments that would have been indefinite. Now, if it had been. The court had ordered, in a sense, indefinite periodic monthly payments. It, it seems that way to me, yes, Your Honor. The parties agreed that it should be one lump sum. They did. That's what the court ordered. Exactly. Now, now I would say if the court had. Is that a modification? I don't believe so. It, it would be if the court had said, for the next 30 years, pay your wife this much money per month, and then at some point in the middle of that time or towards the end of that time, the parties had agreed, hey, I'm just going to pay you the rest of this. Let's look back to what the court ordered. I'm just going to comply with it, and then I won't have any more obligation to you, and we'll do it in a lump sum. That might be a modification. In this case, the parties took this out of the court system. And I think if we look to procedurally what happened in family court, that becomes even more clear. Because in this case, there was a family court order that had increased Mr. Johnson's alimony payments, had looked back to the previous decree and said, you're going to have to pay your ex-wife more. And then the reason the parties got into the settlement situation is because he had appealed that order. Now, if we were looking at that order right now that the family court had issued, that would be a modification. But the parties' decision here was to completely end any obligation that existed previously under the district court order. I think if you look at the district court order ---- I didn't end the obligation to pay alimony. I'm sorry? The agreement did not end the obligation to pay alimony. It just made it a lump sum. It did make it a lump sum. But I still think there's a distinction here between looking back to and satisfying what the family court had previously ordered and saying, okay, even though the decree orders me to pay alimony to you indefinitely, we are going to agree to have a contract between ourselves to pay a lump sum. Now, that lump sum may or may not equal ---- well, probably there's no way of determining whether that lump sum equaled what would be owed. But I think that that is a fundamentally different situation than what you're talking about. If either party had gone back into the family court and said, we want to modify or I want to modify, the other party does not oppose it, the duty to pay alimony monthly, and instead we have agreed upon a lump sum, would that be a modification? The resulting court order? Yeah. The court granted the motion. I think that could be considered a modification. In that case, that order certainly wouldn't be considered probably a written instrument incident to divorce. So you wouldn't have the same question you have here, which is distinguishing when you do have a written instrument incident to divorce, when is that instrument also a modification. I think maybe it's useful to look at an analogy ---- well, not exactly an analogy, but a comparison with contract law in this case, which is a modification is really more like an amendment in contract law, whereas what we really have here, I think, is an ovation. We have an agreement that completely takes on new obligations. It looks only forward, not back. It purports to be now the only agreement between the parties. And I think, Judge Alarcon, your question ---- Earlier requirements. Yes. It purports to cancel earlier requirements. So that would modify it. It does. Yes. I believe it. Yeah, exactly. Because you would have to go into district court in a court of general jurisdiction  Let's say the agreement said ---- let me find the agreement. It says you owe zero dollars more in alimony. And then they have followed the agreement's language. And the judicial district family division shall not retain jurisdiction over any issues regarding alimony. Would that be an amendment or modification to the original decree? I'm sorry. I'm going to have to ask you, too. I'm sorry. If it said you owe zero dollars in alimony. If the agreement between the parties said that. The new 1997 agreement. Okay. It's 400,000. You owe zero. And they had all the same language. The court has no further jurisdiction over this one issue. And if there's any effort to enforce it, you come back to this agreement. Would that be a modification? No. I don't believe that would be. So I don't understand why that wouldn't be a modification. Because you said if it decreased the amount, it would be a modification. And that would decrease it from something to zero. So I'm trying to understand the legal threat of your argument. I think the distinction is that in one case, I wasn't assuming that all of the language doing away with the court's prior orders was in the agreement. That's one reason. I think you could have an agreement that didn't say any of that and that just said I'm going to pay you more alimony. I think that would be a modification. If the parties, I think it would be pretty rare for the parties to agree to something where they would agree to pay indefinitely more alimony and to then include all the language divesting the family court of jurisdiction. But if that did happen, I would say that is not a modification. That would be a standalone agreement if it did include that type of language. But if they decreased it and said you owe zero, that's not a modification? Not if it includes all the same language that appears in this agreement. So what is the language in this agreement? Is it just that the family court doesn't have any more jurisdiction? Is that why it's not? That's part of it. And it also says, I believe, 2, it says that any future claims between Stanley and Joyce may only be asserted in an action upon this settlement and release agreement. So there's no way, at least following the language of this agreement, there's no way the parties can go back and try and enforce the decree or any modifications made thereto by the family court. And I think you can see that further when you look at the actual family court order that was issued in this case, and that's at the excerpts of Record 34. That stipulation and order doesn't purport to look back to the divorce decree either or to affect in any way any modifications made prior to this order by the court based on that decree. All it does ---- Typically, if you have a settlement agreement in a divorce, even in a county that has family court, and the divorce is final so that there's no question that you've been divorced and there's no kids, let's say we don't have any kids issue involved, we just have alimony or property, then it's just enforced as a contract also. But it is incident to a divorce that you've made that settlement agreement. So I think whether it's incident to a divorce and whether it's a modification of that decree are two separate issues. So certainly it could be incident to, but not necessarily a modification of. I'll tell you what I have a hard time with is the fact that it's canceling some of the obligations of the decree of divorce, which is similar to Judge McKinnon's question, what if it were zero? But here it's canceling some. So why isn't that a modification of that when it is in fact canceling obligations under the divorce? I think that maybe that goes back to my attempt at a contract law analogy, which is if you amend something, that's what it means to modify. To change in incidental terms is to modify. And the case law backs that up. All of those cases dealt with changing things in incidental terms, increasing or decreasing the support obligations, dealing with arrearages, which had already been ordered. If you have a case where it's purporting to do away with something that existed previous to that, I believe it's inserting a new obligation in place of the old. What happens to the divorce decree paragraph that has alimony in it? So you have a piece of paper. It says a divorce decree. It says if it no longer exists at this point for these two parties. Well, no, but as a legal matter, that is a court order. Yes. You must pay. It's like a judgment in effect. Yes. You have to pay $100 a month. You're now saying I'm wiping that out. Exactly. It has no more force in effect. How can you wipe that out without modifying the document that it's in? By replacing it. By replacing it with a new one. By entering into a new contract. Now, it doesn't quite work because the divorce decree was ordered by the court, and now we have an agreement by the parties. But you can imagine if they're ñ well, it doesn't quite work. It doesn't work as an analogy, I'm saying. But I think it does work in practice and as a legal matter to say that now we used to have an obligation under the divorce decree. Now we don't. Now it says that the divorce decree no longer exists. We now have an obligation under this agreement, which we ourselves entered into. I know my time is up, but I want to just point out that the approach we're suggesting is not only in accord with the plain language, but it's a common sense approach. For example, if you have a document prior to a new law and a document after a new law, and the later document purports to do away with and replace the earlier document, then the new law, it makes sense that the new law should apply to the later document. This is what people would expect to happen. If they had a later document that looked back to the prior one and said we're just going to tinker around with some things, they might expect the old law. You know what this reminds me of is Quadros and those kind of things, which, you know, people aren't ever sure if this or that applies. So just to be safe, dissolution attorneys, you know, they add that little sentence in there. And here, if they had added it in, I guess we wouldn't be arguing whether it was one or the other. Sure. And I think that's, you know, one of the problems here is they had family law attorneys, they're in family law court. They said, hey, we're entering into this agreement in 1997, you know, almost 15 years after the old law changed. They probably said we're entering into this agreement, we're doing away with that old divorce decree, I'm getting rid of this problem in my life. They assumed. I'm sympathetic to it because there's a lot of tax pitfalls in the dissolution area, as you well know. And we'll hear from the government. Thank you. We have another question. Because you opened something up about common sense. Okay. Why doesn't E2 make really the most common sense that if we've got this situation, parties agree which way it's going to be, whether the recipient or the payer is going to get the deduction? I think that there is a certain sense to E2. I'm not saying that it should never apply. My only contention here, as far as common sense is concerned, is that if you're a party 30 years down the road, 50 years down the road, are you commonsensically going to think that this new agreement you've entered into, doing away with all that old divorce stuff that you've been dealing with, are you really going to think, you or your family law attorney, that you're going to have to read an old provision of the law that existed prior to 1984? And I just don't think that it's reasonable to expect people to make that as a common sense determination. Thank you. Good morning. May it please the Court. John Schuman, representing the Commissioner of Internal Revenue. Counsel is correct that there are two questions here that we need to address, the first being whether the old version of Section 71 of the Internal Revenue Code applies in this case or the new version. And then secondly, if the old version applies, how does it apply? So I'd like to address the first question first. DEFRA, the Deficit Reduction Act of 1984 in Section 422E, E1 and E2, must be read together, those two provisions, E1 and E2, and they must be harmonized. And it's our position that the only way to do this is to recognize that, in effect, there are three categories of decrees under this provision. The first category is old decrees, that is, decrees that were originally entered before 1985, before the effective date of DEFRA. In that case, the old law would apply. The second category is new decrees. These are entered after 1984. And in this instance, the new law would apply, new Section 71. So in either one of those two first categories, the date of execution of the instrument in question is what really controls. However, under 422E2, there is a third category created, or the category of modified decrees. Now, these are decrees that were entered before 1985, but they were modified after 1985. And that's the situation we have here. Now, in this instance, the parties can choose which law applies. But if they fail to choose, the default is that the old law applies. Here, the parties, of course, do not indicate which law would apply. So the default is that the old law does apply. Now, this three-part distinction makes sense as sort of a soft phase-in of the new tax law. Critically, this is the only way to read Section 422 so that 422E2 still has some meaning. Now, this reading that is creating this third category of modified decrees, it's settled law in the tax court. In the Martin case, in Stroud, in Libman, as well as in the Kitsch case, it was affirmed by the Tenth Circuit. And Martin, of course, was affirmed in an unpublished decision of this Court. Although the counsel does seek to distinguish all these cases, all these cases did recognize this category of modified decrees under 422E2. Now, the taxpayers' reading of 422E2 is so cramped that it renders this section, subsection, meaningless and superfluous. The taxpayer says that 422E1 states the general rule, and that's correct. The date of execution is controlling generally. However, they also say on page 16 of their brief, their opening brief and elsewhere, that 422E2 is not a limitation or an exception to that rule. Instead, taxpayer says that this subsection expands the application of the new law. However, the taxpayer can't give us a single example of where 422E2 would be controlling under their theory. The example that they cite is from the one given in the Treasury regulation here, where a post-1984 decree adopts a pre-1985 separation agreement without making any changes at all. Of course, that's not the situation here. There were significant changes made when it was modified. But under the taxpayers' reading of 422E1, the new law already applies because the decree was ultimately adopted after the effective date of the statute. So, therefore, there's no need to expand the application of the new law. So 422E2 is simply superfluous. It has no role. And, obviously, we need to interpret all parts of the statute so they do have meaning and can be harmonized together. And, in fact, in all of the taxpayers' examples in their brief, the new law already applies under their theory. So there's no need for 422E2 to expand the applicability of the law. They make much in their brief about Congress's failure to use a special term of art to create a general rule and then qualify it, as it did here in 422E. But in 422, Congress set up the general principle in 422E1 and then said it would apply, quote, except as otherwise provided in this subsection, unquote. And then in the very next subsection, E2, they used the word also to indicate that Congress qualified the general rule and created a third category of modified decrees. And also in this instance is used to further refine the distinctions between the types of decrees. Now, there's certainly no unfairness in applying the old Section 71 to a modification of a decree that was first entered eight years before this statute was amended. In fact, it would be unfair to allow the taxpayer here to receive by judicial fiat that which he could not get by negotiation with his former spouse. And the Treasury regulation that they cited certainly does not support their position either. Moving on to the second point in the analysis, under the old Section 71, the taxpayer's $400,000 payment is a lump sum, non-periodic payment, and it is therefore not deductible alimony. And the 1997 settlement and resultant order from the family division of Clark County was a modification of the 1976 decree. It was the final modification. It was not independent of the 1976 decree, but it specifically resolved issues that originated in 1976 with the original divorce decree. Now, the settlement came about as a result of Mr. Johnson's motion to modify the old decree. And if there's a question about whether this was a modification or not, I think the taxpayer's motion in family court certainly resolves that, as is stated in the settlement agreement itself on page 28 of the excerpt of the record. The title of the taxpayer's motion was a motion to modify the decree of divorce and to modify or terminate alimony payments. And it was filed in 1993 and ultimately led to the settlement and the final order from the family court. The settlement, in effect, substituted a $400,000 lump sum payment for continuing periodic payments. And that was not something the taxpayer obviously would have agreed to absent the 1976 decree. In fact, if this settlement is along the lines of a complete novation, as counsel would suggest, we would have a taxpayer making a $400,000 payment without any reason to do so. Without the underlying divorce decree, this payment doesn't make any sense. The taxpayer was obviously trying to wrap up his alimony obligations and pay them off in one lump sum, and that's what he did. And that was the final modification. Now, the Lounsbury decision of this Court holds that a taxpayer's intent to extinguish alimony obligations, as occurred here with a lump sum payment, still does not change the lump sum into deductible alimony under the old law, under old Section 71. And the cases that counsel has cited, Stroud, Martin, and the others, make no distinction between a slight modification and a wholesale modification. The statute doesn't make that distinction either. It just refers to the concept of modification. And that is certainly what occurred here. Finally, in their last argument, the taxpayer argues that Section 71C of the Code applies for a partial deduction here, a 10 percent deduction. However, Section 71C doesn't really apply at all. This provision only applies where a lump sum payment is used to pay off a principal sum, a principal sum of indebtedness that was specified in the original decree. And here, Section 71C doesn't apply at all because neither the 76th decree nor any of the later modifications or even the final modifications set out a principal sum. This wasn't a payment of a debt. This was alimony. And the revenue ruling cited by the taxpayer in his brief doesn't support his position because it is also premised on a situation where the principal sum is set out in the decree. And the taxpayer would have us create this principal sum by adding together all the payments and then making that a constructive principal amount. But, in fact, that's not what happened, and that was not in the decree. And certainly Section 71C does not apply. In sum, the tax court correctly construed and applied the Internal Revenue Code sections at issue, and the government urges affirmance of the tax court's decision. If there are no questions from the Court, we'll rest on our brief. Thank you. Can I ask a quick question? Just really quickly, I think that there's no reason, according to the plain language of the statute, to think that Congress did not intend for it to be as expansive as we are arguing. The statute provides for a general rule to let New 71 apply. Why not interpret that to let New 71 apply to as many circumstances as the language would allow? In addition, this supports Congress's intent in the alimony provisions of the tax code to require the person who benefits from the alimony payment to pay the tax on that alimony. Now, under our interpretation, that is exactly what would happen here. Now, the other thing that I wanted to point out is the government continues to say that we would render 422E2 superfluous. I think, as I pointed out in my prior argument, that's not the case. We're just saying look first to see whether it's a written instrument incident to divorce. If it's not, then you can move on and say is this a modification, such as a court order modifying alimony. Thank you. I think I'm done. Thank you. The case of Johnson v. Commissioner is submitted.
judges: Hug, Alarcon, McKeown